```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION
```

JUMEL H. SHAIDNAGLE, individually, and on
behalf of the WRONGFUL DEATH BENEFICIARIES OF
NICHOLAS L. PASTOR, deceased, and the ESTATE
OF NICHOLAS L. PASTOR, deceased                           PLAINTIFFS

VS.                          CIVIL ACTION NO: 5:13-cv-112-DCB-JCG

ADAMS COUNTY, MISSISSIPPI by and through its
Board of Supervisors, ADAMS COUNTY SHERIFF'S
DEPARTMENT, CHARLES R. "CHUCK" MAYFIELD, JR.,
Sheriff of Adams County, Mississippi, in his
individual and official capacities; LAURA
SMITH, RONALD DUNMORE, LAKEISHA OWENS, JAMES
ALLRED, CHARLES HARRIGILL, and JOHN DOES I-V,
in their individual and official capacities              DEFENDANTS

### ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT AND
### GRANTING IN PART AND DEFERRING JUDGMENT ON MOTION

This cause is before the Court on Defendant's, Laura Smith, Motion for Summary Judgment **[docket entry no. 134]**, Defendant's, James Allred, Motion for Summary Judgment **[docket entry no. 137]**, Defendants', Adams County, Mississippi, Charles Harrigill, and Charles R. Mayfield, Jr., Motion for Summary Judgment **[docket entry no. 139]**, and Defendants', Gary Conn and Ronald Dunmore, Motion for Summary Judgment **[docket entry no. 147]**. Having reviewed the motions and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

1

I. Factual and Procedural Background

On July 27, 2012, Nicholas Pastor threatened to commit suicide at his family's hunting camp. He had doused himself in fuel, intending to set himself on fire. Pastor also had a loaded firearm in his possession. His family arrived and talked Pastor out of taking his own life. That same day, Pastor's family convinced him to seek psychiatric treatment at the Natchez Regional Medical Center. He was transferred to the University of Mississippi Medical Center ("UMMC") in Jackson, Mississippi, that evening.

On July 28, 2012, Pastor was discharged from UMMC and returned home to Adams County. Although UMMC determined that Pastor was no longer actively suicidal, Pastor's family was still concerned for his welfare. Pastor's cousin contacted Tim Cotton, a Special Master for the Adams County Chancery Court, to have Pastor incarcerated. Cotton signed an Order to Hold that would allow the Adams County Sheriff's Department to jail Pastor before a hearing. The Order to Hold states:

> On this day sufficient information was brought before the Court regarding an Individual by the name of Nicholas Pastor. After considering said information, the Court is of the opinion that Mr. Pastor is certainly a danger to himself in his current condition and could pose as a flight risk as well if not detained.
> Therefore, it shall be the Order of this Court that Nicholas Pastor be taken into custody by any certified law enforcement officer and transported to the Adams County Jail to be held until such time that a full hearing can be conducted to determine Mr. Pastor's psychological condition and needs.

Resp. Ex. 2, ECF No. 174-2. Based on the Order to Hold, the Adams

2

County Sheriff's Department arrested Pastor on July 28, 2012, and took him to the Adams County Jail ("the Jail").

Pastor was booked into the Adams County Jail at around 2:40pm on July 28, 2012. Defendant Laura Smith is the staff sergeant who was on duty when Pastor was booked. Defendants Ronald Dunmore and Gary Conn are jailers who were on duty at that time. Defendant James Allred is a jailer who came on duty while Pastor was incarcerated. Defendant Lakeisha Owens is the staff sergeant who replaced Smith at shift change. Pastor was brought into the Jail through a sally port and seated outside the control room. Smith had already seen the Order to Hold before Pastor's intake questionnaire was completed. The Order to Hold was necessary for Pastor to be booked into the Jail. Dunmore and Conn interviewed Pastor during booking to complete the intake questionnaire. Neither Dunmore nor Conn were aware of the circumstances under which Pastor had been brought to the jail or of his earlier suicide attempt. Pastor denied being suicidal or having previously attempted suicide. Although he told Dunmore and Conn about being in the hospital, Pastor did not tell the jailers the reason for his hospitalization. Further, Dunmore and Conn observed Pastor's behavior during the interview and found him to be talkative and normal-acting. Overall, he exhibited no signs or indications of suicidal behavior that Dunmore or Conn observed. After the questionnaire was completed, Smith reviewed Pastor's answers and Dunmore's and Conn's

observations of Pastor. These together with her own observations of Pastor and the Order to Hold formed the basis for Smith's decision not to place Pastor on suicide watch.[1]

Thereafter, Pastor was placed in a holding cell and classified as a "lunacy" inmate. Because he was not placed on suicide watch, Pastor received toiletries and regular clothes. Standard procedure for non-suicide watch "lunacy" inmates was for the jailers to check on them once every hour. Video surveillance in the hallway outside the holding cell reveals when Dunmore, Conn, and Allred–who came on shift at 6:00pm–checked on Pastor. Dunmore or Conn checked on Pastor intermittently by looking through the window of the holding cell before bringing Pastor food and medication around 4:40pm. According to the surveillance footage, no one checked on Pastor again before his body was found by Allred around 6:20pm, in violation of the Adams County Jail's policy. Pastor had strangled himself by tying his pants around the sink in his cell and around his neck.

Pastor's mother, Plaintiff Jumel Shaidnagle, brought this suit

---

[1] There is some evidence that Pastor was marked in the computer system as a suicide watch after his death. This evidence, while concerning, is irrelevant for these motions because at issue is the subjective knowledge of the defendants. Plaintiffs have been unable to identify who made this change or when. Further, each defendant has testified that he or she did not make this change and that they either had no knowledge that Pastor was on suicide watch or that they made the decision that Pastor should not be on suicide watch. Plaintiffs have not countered this testimony, and the arguments about spoliation are unavailing.

4

on behalf of her son's wrongful death beneficiaries and her son's estate (collectively, "Shaidnagle"). In her amended complaint, Shaidnagle brings claims for a deprivation of civil rights under 42 U.S.C. §§ 1983, 1985, 1986, & 1988, claims for vicarious liability, and a declaratory judgment action seeking to have the Court declare the policies at issue in this case unconstitutional and enjoin the defendants from enforcing them.

On January 12, 2015, the parties, through counsel, participated in a pretrial conference. A pretrial order was entered on January 20, 2015, clarifying the remaining defendants and claims. Defendant Lakeisha Owens, whose first name has variously appeared as Tekeisha and Keisha in the briefs, is no longer involved in this case.[2] Shaidnagle brings claims under Sections 1983, 1985, 1986, and 1988 against all defendants, in addition to her claims for equitable relief and declaratory judgment. Shaidnagle also seeks punitive damages against Defendant Charles R. Mayfield, Jr., ("Sheriff Mayfield") Defendant Charles Harrigill, Smith, Dunmore, Conn, and Allred. The defendants bring a Section 1988 crossclaim for attorneys' fees and costs against the plaintiffs.

II. Analysis

A. Summary Judgement

---

[2] At the pretrial conference there was some discussion that Owens had never actually been served in this case.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The moving party bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must meet his burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A party asserting that a fact is

"genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Qualified Immunity

"Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, . . . [t]he plaintiff bears the burden of negating the qualified immunity, but all inferences are drawn in his favor." Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). In assessing a claim of qualified immunity, courts apply the two pronged analysis established in Saucier v. Katz, 533 U.S. 194 (2001), but the court may address the prongs in any order, Pearson, 555 U.S. at 225.

One prong asks "whether Plaintiff's allegations establish a

constitutional violation." Hope v. Pelzer, 536 U.S. 730 (2002). The second prong asks "whether the right was clearly established." Saucier, 533 U.S. at 201. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

### C. Section 1983 Claims

#### 1. Adams County, Mississippi

Because a suit against an official in his official capacity "is no different from a suit against" a governmental entity, the Court will analyze all of the official capacity claims in the same manner in which it analyzes the claim made against Defendant Adams County, Mississippi ("the County"). See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that officials acting in their official capacities are not persons for purposes of Section 1983 litigation). "To hold a municipality accountable for a violation of constitutional rights, a plaintiff must show: (1) that the municipal employee violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). Shaidnagle fails to show a policy that was "adopted and maintained with objective deliberate indifference." This prong

requires identification of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom," Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). The objective deliberate indifference standard "considers not only what the policymaker knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." Lawson v. Dallas Cnty., 286 F.3d 257, 264 (5th Cir. 2002). Shaidnagle has identified Sheriff Mayfield, Harrigill, and Smith[3] as policymakers. The official policy at issue here concerns how jail staff interpret an Order to Hold so that a determination can be made as to whether an inmate poses a suicide risk.[4]

Supreme Court precedent "underscores the need for . . . plaintiffs to establish both the causal link ('moving force') and the [county's] degree of culpability ('deliberate indifference' to

---

[3] The defendants refute Smith's status as a policymaker and argue that she was merely acting within the discretionary authority of her job as staff sergeant. Because the Court finds that the policy did not rise to the level of a constitutional violation, the Court need not reach the question of whether Smith qualifies as a policymaker. Further, Sheriff Mayfield is a policymaker for this analysis, so that this element is satisfied, thus allowing the Court to analyze the County's liability.

[4] The County concedes the existence of a policy. Under these facts, the relevant policy allowed staff sergeants to make the final determination on whether an inmate should be placed on suicide watch. An Order to Hold was not dispositive of this decision, and the sergeant on duty was to consider such an order in addition to the inmate's responses to the intake questionnaire and the inmate's behavior.

federally protected rights) . . . [W]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat liability." Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir. 1998) (citing Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 415 (1997)) (internal quotation marks omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cnty., 520 U.S. at 410. Assuming arguendo that a violation of Pastor's constitutional rights occurred, Shaidnagle has failed to show that the policy was the moving force behind the violation. The policy required a staff sergeant to consider several relevant factors before making a determination as to whether an inmate should be placed on suicide watch. Because it includes these factors, the policy is not deliberately indifferent to the constitutional rights of inmates.

   2. Sheriff Charles R. Mayfield, Jr., and Charles Harrigill

   Under the facts presented, Sheriff Mayfield and Harrigill may be held liable only on a theory of supervisory liability. Neither was present at any time before Pastor's death. There are two theories of supervisory liability: (1) failure to train or supervise the officers involved, Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 459 (5th Cir. 2001), and (2) implementation of "a policy so deficient that the policy itself is a repudiation of

constitutional rights and is the moving force of the constitutional violation," Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotations omitted). If the jailers were only required to complete a state mandated training program, then the plaintiff must prove the state training was inadequate. See Benavides v. Cnty. of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Also, mere proof that the injury would not have occurred if the officer had received better or additional training cannot, without more, support liability. Roberts v. City of Shreveport, 397 F.3d 297 (5th Cir. 2005). Shaidnagle has not shown that the training the jail staff received was inadequate, and, therefore, neither Sheriff Mayfield nor Harrigill can be liable under this theory. Further, as discussed supra, the policy in place to determine whether Pastor was a suicide risk was not the moving force behind a constitutional violation, and, therefore, neither defendant can be held liable under this theory. The Court will grant the motion for summary judgment as to these two defendants.

### 3. Ronald Dunmore and Gary Conn

"[T]he correct legal standard is not whether the jail officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." Hare v. City of Corinth, Miss., 74 F. 3d 633, 650 (5th Cir. 1996). Here, because Smith is the only jail officer to have seen the Order to Hold and the computer system

reflected that, at booking, Pastor was not placed on suicide watch, neither Dunmore nor Conn had actual knowledge of a substantial risk of Pastor's suicide. Therefore, they are entitled to summary judgment in their favor based on their qualified immunity. Shaidnagle raises questions about whether Dunmore had in fact seen the Order to Hold, but these allegations are not supported by any facts in the record and do not contradict Dunmore's deposition testimony that he had not seen the Order to Hold. Further, although the facts show that Dunmore and Conn did not adhere to the policy to check on inmates every hour, this failure does not rise above negligence and fails to support liability. See Rogge v. City of Richmond, Tex., 995 F. Supp. 2d 657, 670 (S.D. Tex. 2014) (holding that "failure to comply with [jail] procedures does not constitute deliberate indifference if [the jailer] was unaware of [the inmate's] risk of self harm") (citing Whitt v. Stephens Cnty., 529 F.3d 278, 284 (5th Cir. 2008)); Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 398 (5th Cir. 2000) (holding that failure to comply with policy for regular checks on inmate "evince[d] at best, negligence on the part of [the jailer], which is insufficient to support a finding of deliberate indifference") (citing Hare, 74 F.3d at 645-46).

### 4. James Allred

Shaidnagle brings Section 1983 claims for failure to protect and failure to provide medical treatment against Allred. Allred is

entitled to summary judgment on both claims. As to the failure to protect claim, Allred had no actual knowledge that Pastor was a suicide risk. See Hare, 74 F.3d at 650. Allred came on duty roughly twenty minutes before he discovered Pastor's body in the holding cell. This was the first time that he saw Pastor that day. When he came on duty, Owens, his supervisor, told Allred that he should "keep an eye on" Pastor. Allred, however, did not understand this instruction to mean that Pastor had been placed on suicide watch but rather that Pastor was related to someone connected to the jail somehow and that Allred should keep him company more than a typical inmate. Being told to "keep an eye on" an inmate does not create actual knowledge of a suicide risk. See Speck v. Desoto Cnty., Miss., Nos. 2:08cv95; 2:10cv51, 2012 WL 2685060, at *10 (N.D. Miss. Jul. 5, 2012). Therefore, Allred is entitled to summary judgment on this claim because Shaidnagle has not shown that Allred acted with deliberate indifference.

As to the failure to provide medical treatment claim, Shaidnagle argues that Allred could have and should have attempted to resuscitate Pastor upon finding him. To support a claim for delayed medical treatment, a plaintiff must show that a defendant acted with deliberate indifference and that that indifference resulted in substantial harm. Mendoza v. Lynaugh, 25 F.2d 191, 193 (5th Cir. 1993). Allred argues that there is no evidence that Pastor could have been revived and that there is no evidence that

Pastor was still alive when Allred started his shift. Further, Shaidnagle has presented no medical evidence to support the theory that any delay in treatment harmed Pastor. As soon as Allred saw Pastor, he immediately went to retrieve the key to the holding cell and alerted his supervising officer. Allred estimates the time between when he found Pastor and when his supervising officers arrived to be around two and a half minutes. Shaidnagle has not shown that Allred acted with deliberate indifference or that Allred's course of action resulted in substantial harm to Pastor. Therefore, the court will grant summary judgment in favor of Allred on these claims.

### 5. Laura Smith

The Court reserves judgment on the motion for summary judgment as to the Section 1983 claim against Smith pending a hearing.

### D. Section 1985 and 1986 Claims

To recover under 42 U.S.C. 1985(2), a plaintiff must show a conspiracy by either (1) "a nexus between the alleged conspiracy and a proceeding in federal court" or (2) "a racial or otherwise class-based discriminatory animus" "designed to deny or interfere with equal protection rights." Bradt v. Smith, 634 F.2d 796, 801 (5th Cir. 1981). To recover under 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy;

14

>   (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing the plaintiff must show that the conspiracy was motivated by a class-based animus.

Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994). Further, "a valid § 1985 claim is a prerequisite to a § 1986 claim." Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000).

Several defendants argue that these claims are barred by the statute of limitations because the defendants were not brought into this suit until May 22, 2014, the date Shaidnagle filed her amended complaint, and the complained of actions took place in July of 2012. The defendants are correct that Shaidnagle has sued them outside of the statute of limitations, and they are entitled to summary judgment on this defense because her claims cannot relate back to the filing of her original complaint.

A party may add defendants to a suit and have those claims relate back to the filing of the original complaint when the requirements of Federal Rule of Civil Procedure 15(c) are met. See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 547 (2010). The purpose of the relation back doctrine is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." Id., at 550. When a plaintiff has made a mistake in identifying the originally named defendants, the only question to be answered before a claim can relate back to a newly added

15

defendant is "whether [the newly added defendant] knew or should have known that, absent some mistake, the action would have been brought against him." Id., at 549. "The Fifth Circuit has held the Rule 15(c) relation-back is not available to a plaintiff who sues 'John Doe' because the plaintiff does not know who the defendant is." Trigo v. TDCJ-CID Officials, No. H052012, 2010 WL 3359481, at *14 (S.D. Tex. Aug. 24, 2010) (citing Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998)). In Jacobsen, the Fifth Circuit held that "for a 'John Doe' defendant, there [i]s no 'mistake' in identifying the correct defendant; rather the problem was not being able to identify that defendant." Jacobsen, 133 F.3d at 321. Because the Fifth Circuit does not recognize the naming of a defendant as John Doe as a mistake in the identity of a party, Rule 15(c) relation-back is unavailable. See also In re Juliet Homes, LP, Bankr. No. 07-36424; Adversary No. 09-03429, 2010 WL 5256806, at *8-9 (Bankr. S.D. Tex. Dec. 16, 2010) ("Under Trigo, an error based on a lack of knowledge rather than confusion about the identities of parties does not qualify as a mistake under Rule 15. The realization that additional parties could have been sued is generally not a mistake of identity. Such an error is usually based on a lack of knowledge, not on mistaken knowledge about the identities of the parties."). Therefore, all of the defendants except for the County and Sheriff Mayfield, who were named in the original complaint, are entitled to summary judgment on these claims based on the expiration of the

statute of limitations.

Turning to the merits of these claims for the remaining defendants, the result is the same. "[A]s a matter of law state officials of a single agency generally cannot conspire with their employer agency or with one another in the carrying out of their official duties as agency employees." Fontenot v. Texas, 44 F.3d 1004, *4 (5th Cir. 1994). Without a valid Section 1985 conspiracy, the claim under Section 1986 must also fail. Therefore, the County and Sheriff Mayfield are entitled to summary judgment on these claims.

### E. Section 1988 Claims

"In any action or proceeding to enforce a provision of sections . . . 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ." 42 U.S.C. § 1988 (2000). "A litigant is not eligible for attorney's fees unless it is a 'prevailing party.'" Walker v. City of Mesquite, Tex., 313 F.3d 246, 249 (5th Cir. 2002). "To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties: and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." Id. In this case, the plaintiffs are not prevailing parties on any

of the claims decided in this order. Further, the Court finds that it would be inappropriate to award attorneys' fees to the defendants in this case. Therefore, the Court will deny summary judgment on these claims.

### F. Vicarious Liability

Shaidnagle is no longer pursuing claims for vicarious liability according to the pretrial order. See Pretrial Order 3-4, ECF No. 205. Therefore, the defendants are entitled to summary judgment in their favor on these claims, and the Court will grant the motions as to the claims for vicarious liability.

### IV. Conclusion

As to the claims brought under Section 1983, all of the defendants are entitled to summary judgment based on their qualified immunity, with the exception of Laura Smith. The Court defers ruling on her qualified immunity defense pending the outcome of a hearing on the motion. All of the defendants are entitled to summary judgment on the claims brought under Section 1985. The majority of the defendants successfully raise a statute of limitations defense, and the remaining two defendants are entitled to summary judgment based on the merits. All of the defendants are entitled to summary judgment on the claims brought under Section 1986 because the Section 1985 claims fail. The claims for attorneys' fees and costs brought under Section 1988 are denied, with the exception of fees related to the remaining Section 1983

claim against Smith, pending the outcome of the hearing. Lastly, based on the pretrial order, the Court dismisses without prejudice Lakeisha Owens and finds the claims for vicarious liability against all defendants have been abandoned.

## V. Order

IT IS HEREBY ORDERED that Laura Smith's Motion for Summary Judgment is GRANTED IN PART and a hearing shall be held on the motion for summary judgment as to the remaining claims against Smith. The parties shall contact the Chambers of Judge David Bramlette to set the hearing.

FURTHER ORDERED that James Allred's Motion for Summary Judgment is GRANTED.

FURTHER ORDERED that Adams County, Mississippi's, Charles Harrigill's, and Charles R. Mayfield, Jr.'s Motion for Summary Judgment is GRANTED.

FURTHER ORDERED that Gary Conn's and Ronald Dunmore's Motion for Summary Judgment is GRANTED.

FURTHER ORDERED that Lakeisha Owens is DISMISSED WITHOUT PREJUDICE from this case.

SO ORDERED this the 27th day of January 2015.

                                /s/ David Bramlette
                                UNITED STATES DISTRICT JUDGE